UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JABARI HASHIM SPENCER,

                Plaintiff,        10-CV-822A(Sr)

v.

DEPUTY HUSSAN,
DEPUTY DELIO,
DEPUTY KNUFFER,
FIRST DEPUTY SUPERINTENDENT REARDON,
and
CAPTAIN HARTMAN,

                Defendants.

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #20.

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that during his pretrial detention at the Erie County Holding Center ("ECHC"), defendants failed to protect him from an assault by another inmate and subsequently failed to afford him access to adequate medical care. Dkt. #1.

Currently before the Court is defendants' motion for summary judgment. Dkt. #39. For the following reasons, it is recommended that the motion be granted.
.

## BACKGROUND

Plaintiff entered the ECHC on September 9, 2009 following his arrest for, *inter alia*, robbery in the second degree. Dkt. #39-15, ¶ 4. He was transferred to the Erie County Correctional Facility on November 14, 2009 and returned to the ECHC on December 7, 2009. Dkt. #39-15, ¶¶ 5-6. Captain Hartman placed plaintiff in protective custody segregation beginning in May, 2010 due to numerous threats to his safety. Dkt. #39-13, pp.90-97 & Dkt. #42, ¶ 4.

On June 30, 2010, plaintiff was placed on the Gulf East Keep Lock Unit even though he was not on keep lock status. Dkt. #39-1, ¶ 29 & Dkt. #39-15, ¶¶ 12 & 14. On July 7, 2010, plaintiff received an administrative segregation order placing him on keep lock after he was subjected to disciplinary charges for threatening staff. Dkt. #39-3, p.30. Plaintiff's administrative hearing record of July 8, 2010 indicates that plaintiff remained on protective custody status due to his classification as a security risk and noted that plaintiff was moved to a keep lock unit because he was acting out, but that plaintiff was allowed to co-mingle with inmates on his housing unit. Dkt. #39-3, p.29.

Plaintiff requested transfer from Gulf East on July 10, 2010, stating:

> I respectfully request I be allowed to be housed on Fox South[1] under my current status of protective custody. I

---

[1] Plaintiff testified at his deposition that he was housed on Fox South when he first entered ECHC and "felt it was the safest place to be" but was moved out of Fox South when his security classification changed from podular to linear. Dkt. #39-13, p.36. Plaintiff testified that he thought that if he was around family, such as his "God brother," he might stop getting into so much trouble. Dkt. #39-13, p.36. Plaintiff was involved in altercations with three inmates following his transfer from Fox South to Bravo Long, Bravo Segregation and Bravo Short. Dkt. #39-13, pp.36-38.

> believe the most safe place for me will be on Fox South. My
> Christian brother, Adrianne Taylor (sic) is on Fox South and
> is getting ready to go upstate for twenty years and this is
> really the only time I will be able to speak with him and make
> sure his mind is right and he's on the right track with the
> Lord. Chief Reardon, if you allow this request I give you my
> word as a man I will not let you down. Thank you.

Dkt. #39-13, p.26. The request was denied.

Plaintiff requested transfer from Gulf East cell block again on July 14, 2010, stating:

> Mr. Reardon, at this time I respectfully request and plea with
> you I be housed on Fox South. Not only my brother,
> Adrienne Taylor . . . is up there, but my mom, Donna
> Byrd . . . is worried about his safety at the facility and wants
> me around my brother. He's going upstate for twenty years
> and I'm going up for some time. . . . Please, Chief Reardon,
> house me with my brother. I just need some p[eace] and
> security and a long time with my brother, please. I will
> conduct myself as a stand-up inmate at all times. If I fail
> please give me one year keep lock time. I'm willing to sign
> off on . . . it. If I, Jabari Spencer, get another ticket I will
> automatically get a year keep lock time. Thank you.

Dkt. #39-13, p.30. The request was denied.

Plaintiff's Classification Assessment, dated July 20, 2010, indicates that plaintiff was in protective custody with a history of administrative segregation orders and a keep away list of eight inmates. Dkt. #39-5. First Deputy Superintendent ("Chief"), Reardon declares that in facilities without capacity for separate protective custody units, such as ECHC, keep away orders are utilized to separate inmates who cannot be housed together. Dkt. #39-1, ¶¶ 24 & 27.

-3-

At approximately 9:30 p.m. on July 21, 2010, plaintiff was out of his cell conversing with another inmate who was locked in his cell when inmate Kevon Walker, returning to his cell after receiving medication from the nurse, pushed past Deputy Delio and started attacking plaintiff. Dkt. #39-1, ¶¶ 38-41. Officer Delio ordered plaintiff and inmate Walker to stop fighting and lock in to their cells, threatening to use pepper spray if they did not obey his command. Dkt. #39-1, ¶¶ 44-45. Plaintiff and inmate Walker retreated to their cells as Sgt. Lysarz and a response team arrived on the cell block in response to Deputy Delio's radio alarm. Dkt. #39-1, ¶¶ 42-43 & 47.

Plaintiff and inmate Walker were escorted off the cell block to receive medical attention. Dkt. #39-1, ¶ 48. When asked why inmate Walker may have wanted to fight him, plaintiff informed Sgt. Lysarz that he had many keep away orders and that there were a lot of people "who would want to fuck him up." Dkt. #39-2, p.2. Inmate Walker advised Sgt. Lysarz that he had "wanted to kick the shit out [of plaintiff] as soon as he came on the unit." Dkt. #39-2, p.2. Plaintiff denied any previous altercation or conversation with inmate Walker and testified at his deposition that he had no reason to believe that inmate Walker would assault him. Dkt. #39-13, pp.74-77. Inmate Walker was on keep lock status at the time of the assault. Dkt. #39-1 ¶ 32.

R.N. Gruen examined plaintiff and documented a laceration in the corner of his mouth, abrasions to his right eye and swelling around the orbital bone of plaintiff's right eye. Dkt. #39-1, ¶ 62. R.N. Gruen recommended that plaintiff be transported to the Erie County Medical Center ("ECMC"), for evaluation, where an x-ray of plaintiff's right orbital bone did not reveal a fracture. Dkt. #39-1, ¶¶ 64-66. Plaintiff received five

sutures on his upper left lip and prescriptions for penicillin, Tylenol, Motrin and a mouthwash. Dkt. #39-1, ¶¶ 67-70. He was discharged from ECMC at 5:45 am on July 22, 2010. Dkt. #39-1, ¶ 71.

Plaintiff and inmate Walker were both placed in administrative segregation pending a disciplinary hearing which imposed 20 days keep lock and a surcharge on both inmates, although plaintiff was cleared of wrongdoing on administrative appeal. Dkt. #39-3, p.23 & Dkt. #39-15, ¶ 21. Plaintiff and inmate Walker were issued keep away orders following the altercation. Dkt. #39-15, ¶ 23.

Plaintiff testified at his deposition that for the month following his assault, he was escorted to medical to receive his pain medication in the morning because the medication cart did not arrive on the cell block until later in the day, but that on one occasion Deputy Hussan and Deputy Knuffer refused his request to be seen by medical and called Sgt. Franklin, stating, "this guy thinks he's going to medical every morning," prompting Sgt. Franklin to investigate and then escort plaintiff to medical within a few hours of plaintiff's initial request. Dkt. #39-13, pp.89-90 & 103.

Plaintiff's sutures were removed on July 27, 2010. Dkt. #39-11.

Upon review of the assault by inmate Walker, Chief Reardon informed Captain Hartman of "a few problems which need to be rectified." Dkt. #39-2, p.3. Specifically, Chief Reardon advised that:

1. Med pass should be done door to door with 2 security staff and the nurse.

2. During this pass all inmates should be locked in.

3. Inmates on [protective custody] status and therefore out of there [sic] room, should not have free access to roam the unit and speak to [keep lock not protective custody] inmates.

4. Only in extreme cases are [protective custody] inmates to be left in the [keep lock] pod, [Bravo] & [Charlie] Segs will continue to be the norm for [protective custody] inmates.

5. Deputies are to have their radios on their person at all times.

Please review the written post orders and see that they conform to these rules. Also review incident 248 (video copied in my documents) and forward any recommendations pertaining to the deputies' (Klein & Delio) actions.

Dkt. #39-2, p.3.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Failure to Protect**

Defendants argue that they were not deliberately indifferent to plaintiff's safety and cannot be held responsible for an assault by an inmate plaintiff never identified as a threat. Dkt. #39, p.8. Defendants also argue that plaintiff's injuries were not "substantial." Dkt. #39, p.9.

Plaintiff argues that defendants should have been aware of the risk of harm posed by inmate Walker and should not have permitted an inmate with a violent disciplinary history to be housed and allowed to mingle with inmates in protective custody. Dkt. #43, pp.1-4.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). More specifically, "an inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect him from the violent actions of other inmates may state a viable § 1983 cause of action." *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991); *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985) ("The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment.").

Not every prison scuffle is a matter of constitutional import, however, and minor injuries from random altercations are insufficient. *See Colliton v. Gonzalez*, No. 07 Civ. 2125, 2011 WL 1118621 at *6 (S.D.N.Y. March 23, 2011). Thus, the injury sustained, *i.e.*, "the deprivation alleged, must be, objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. In the instant case, plaintiff's laceration on the face, requiring five sutures, is sufficiently serious to satisfy the objective prong of an Eighth Amendment claim. *Cf. Green v. Leubner*, No. 07-CV-1035, 2009 WL 3064749, at *6 (N.D.N.Y. Sept. 22, 2009) (facial lacerations treated with 18 steri strips sufficiently serious to withstand summary judgment motion).

With respect to the deliberate indifference element, plaintiff must demonstrate that the prison official was subjectively aware that the inmate faced a substantial risk of serious harm but disregarded that risk by failing to take reasonable measures to prevent the harm and ensure a safe environment. *Hayes v. N.Y. City Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996). "The subjective element requires a state of mind that is the equivalent of criminal recklessness; namely, when the prison official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation omitted); *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."), *cert. denied*, 513 U.S. 1154 (1995). Absent clear notice of a risk of harm by way of prior altercations between plaintiff and his attacker or prior threats made against plaintiff by his attacker or some other reason for prison officials to be on notice of the risk of an altercation between plaintiff and his attacker, courts routinely deny deliberate indifference claims based upon surprise attacks. *Parris v. New York Dep't Corr. Servs.*, __ F. Supp.2d __, 2013 WL 2257096, at *5 (S.D.N.Y. May 23, 2013); *Fernandez v. New York Dep't Corr. Servs.*, No. 08 CV 4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010).

In the instant case, although plaintiff was in protective custody, he has failed to demonstrate that any of the defendants were aware that inmate Walker posed

a risk of harm to plaintiff. Plaintiff denied any previous altercation or conversation with inmate Walker and testified at his deposition that he had no reason to believe that inmate Walker would assault him. *See Gssime v. Cadian*, No. 06 CV 1499, 2009 WL 1161040, at *4-5 (N.D.N.Y. April 28, 2009) (inmate's record of assaulting other inmates insufficient to demonstrate prison official knew inmate posed a substantial risk of serious harm to plaintiff). Although plaintiff requested transfer out of Gulf East Keep Lock Unit, it is clear that he was doing so not to avoid harm from inmate Walker, but so that he could be on the same unit as his "God brother." *See Hill v. Beall*, No. 06-CV-6568, 2009 WL 281059, at *7 (W.D.N.Y. Jan. 7, 2009) (granting summary judgment where plaintiff requested to be placed in single-bunk cell due to his own history of assaultive behavior rather than any belief that he was in danger). Finally, although it appears that Deputy Delio failed to follow protocol requiring inmates to lock in during med pass and to prevent inmates in protective custody such as plaintiff from speaking freely with keep lock inmates, that is insufficient to rise above the level of mere negligence. *See Stinson v. Tyminsk*, 08-CV-481, 2009 WL 690608, at *4 (N.D.N.Y. Mar. 11, 2009) (defendants failure to follow proper security procedures suggested, at best, negligence, which does not state a failure to protect claim). As there is no evidence to suggest that any of the defendants personally involved in the decision to house plaintiff on Gulf East or in the supervision of inmates on Gulf East, *to wit*, Chief Reardon, Captain Hartman or Deputy Delio, should have been aware that inmate Walker posed a substantial risk of serious harm to plaintiff, it is recommended that defendants' motion for summary judgment be granted with respect to plaintiff's failure to protect claim.

**Serious Medical Need**

Defendants argue that plaintiff was provided appropriate medical treatment following the altercation with inmate Walker. Dkt. #39, pp.9-13.

Plaintiff responds that defendants Hussan and Knuffer interfered with his access to medical treatment following the assault. Dkt. #43, pp.6-7. Specifically, plaintiff complains he heard defendants on the telephone stating, "[t]his guy thinks he's going to run to medical everyday" and "had to demand a sergeant before he received medical care." Dkt. #42, p.4 ¶¶ 12-13.

In *Estelle v. Gamble*, the United States Supreme Court determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the United States Constitution. 429 U.S. 97, 104 (1976). To establish an unconstitutional denial of medical care that rises to the level of an Eighth Amendment violation, a prisoner must prove, beyond mere conclusory allegations, that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle*, 429 U.S. at 104. More specifically, the prisoner must demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995). Both the objective and subjective components must be satisfied in order for a plaintiff to prevail on his claim. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id.* The alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

Where the claim is that the care provided was inadequate, plaintiff must demonstrate that, as an objective matter, the alleged deprivation of adequate medical care was sufficiently serious, *i.e.*, that he "was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). In making this determination, courts assess whether the inadequacy in medical care is sufficiently serious, *i.e.*, "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280.

In the instant case, plaintiff has not demonstrated the objective element of a claim of denial of adequate medical care. Plaintiff's allegations that on one occasion

he had to wait several hours before receiving Tylenol and Motrin is insufficient to raise a question of fact as to the adequacy of the medical care afforded plaintiff following the assault by inmate Walker.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendants' motion for summary judgment (Dkt. #85), be granted.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

**SO ORDERED.**

DATED: Buffalo, New York
August 22, 2013

  s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**